152 So.2d 586 (1963)
William Louis ENSMINGER et ux., Plaintiffs-Appellants,
v.
The GREAT ATLANTIC & PACIFIC TEA COMPANY, and Aetna Casualty & Surety Company, Defendants-Third Party Plaintiffs-Appellants,
EMPLOYERS LIABILITY ASSURANCE CORP., Ltd., Third Party-Defendant-Appellee.
No. 9913.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1963.
Rehearing Denied April 25, 1963.
*587 Love & Rigby, Shreveport, for plaintiffsappellants.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, attorneys for defendants-third party plaintiffs.
Cook, Clark, Egan, Yancey & King, Shreveport, for defendant-appellee.
Before HARDY, AYRES and BOLIN, JJ.
HARDY, Judge.
This is an action ex delicto by plaintiffs, husband and wife, for the recovery of damages allegedly resulting from a fall sustained by plaintiff wife on property leased by defendant, Great Atlantic & Pacific Tea Company. Also impleaded were the insurer for A. & P., and the owners-lessors of the property, together with their insurer. This case has previously been before this court on an appeal from rulings with respect to certain pleas and motions. In accordance with the opinion of the court (Ensminger, et ux. v. Great Atlantic & Pacific Tea Company, et al., La.App., 134 So.2d 686), the case was remanded for further proceedings. After trial on the merits there was judgment rejecting plaintiffs' demands, from which they prosecute this appeal.
The defendant, A. & P., operates a super market located on the Greenwood Road in the City of Shreveport. The main store building faces south and a parking area is provided immediately in front of the store. Along the east side of the store building runs a sidewalk which is adjacent to an extensive parking area on the east. The sidewalk, seven feet in width and raised six inches above the surface of the parking area, extends along the entire east side of the building and ends at an addition to the main building denominated as a machinery building, containing air-conditioning equipment, etc. Because of damage to the east side of the machinery building caused by carelessly operated cars in the parking area, the A. & P. had caused to be erected nine metal posts which were located at a distance of some 30 to 33 inches east of the east wall of the machinery building. These posts were approximately fifteen inches in height, firmly imbedded in the concrete surface of the parking area and were painted an aluminum or silver color.
On the afternoon of December 18, 1958, plaintiff wife, accompanied by her grown son, drove her automobile into a location in the northeast section of the parking area. In making her way to the store entrance plaintiff proceeded from her car to the somewhat narrow passageway between the metal posts and the machinery building, then around the corner of the machinery building to the sidewalk along the east side of the main building and into the front entrance on the south side of the store. After making the purchase of a package of pork chops, Mrs. Ensminger left the store by the front entrance and retraced her route toward her parked automobile simply by reversing the direction by which she had entered the store. According to the testimony of this plaintiff, after she turned the corner of the machinery building she noticed another woman approaching her at a distance of some 30 to 35 feet, whereupon she moved to her right, and after proceeding two or three steps stumbled over one of the posts which had been bent over the passageway at an angle of about 30 degrees with the surface of the parking area, leaving the end of the post approximately 7½ inches above the concrete. The resulting fall was forceful and caused serious and painful injuries.
Pleas of contributory negligence on the part of Mrs. Ensminger were incorporated in the answer of all defendants after specific denials of any negligence on their part. The district judge did not give written reasons for his judgment but the court *588 has been given to understand, in briefs on behalf of defendants, that he predicated his conclusion upon a finding of contributory negligence, which assertions have not been disputed by counsel for plaintiffs.
After thorough and repeated examination of the record before us, we are convinced that the plea of contributory negligence has been preponderantly established by the testimony of Mrs. Ensminger herself. This plaintiff had been a customer of this A. & P. store since its opening some 20 years prior to the date of this accident and admittedly was familiar with the entire area described above; she had proceeded to the entrance of the store by the exact route over which she was returning; she knew the existence and, presumably, the condition of the iron posts, and had used the walkway between them and the wall of the machinery building prior to the date of the accident. The record is filled with irreconcilable contradictions between the witnesses for the respective parties as to certain facts related to the accident. Among these hotly disputed points are the questions as to the number of posts that were actually standing at the time and the angles to which they had been bent over the narrow passageway between them and the east wall of the machinery building. Mrs. Ensminger was not positive as to whether there was only one post or whether there were a number of posts, nor was the testimony of her son of any definite aid in the determination of this point. The store manager testified that, while he thought there were six posts standing at the time of the accident, he could not be positive. The one certain fact in this connection is that some months after the occurrence of the accident a new line of posts was constructed. These posts were larger in diameter than the original posts, extended somewhat higher, were painted a different color and, additionally, were protected by railroad cross ties laid in front of them toward the parking area, designed to prevent contact between the bumpers of parking automobiles and the posts. Since some of the witnesses had obviously refreshed their memories by revisiting the scene shortly prior to or during the course of the trial, and, inasmuch as their testimony was necessarily based upon the relationship between the new posts which they observed on these occasions and the old posts which actually existed at the time of the accident, we think it reasonable to conclude that their testimony to some extent was influenced by this circumstance. However, in the final analysis, we think it is immaterial whether the number of posts existing at the time of the accident was one or six. Mrs. Ensminger was obligated to make reasonable and prudent observation and to see what could and should reasonably have been perceptible in walking in the particular location described.
It seems clear that the allegation of plaintiffs' petition and the testimony of Mrs. Ensminger with respect to her momentary distraction by an approaching pedestrian was designed to anticipate the plea of contributory negligence and exculpate her from its application. In this connection, counsel for appellants strenuously argues that the momentary diversion of a person's attention does not establish negligence as a matter of law, citing Crosby v. Brown Oil Tools (La.App. 1 Cir., 1957), 92 So.2d 115. While counsel is quite correct in the conclusion that a momentary diversion of attention does not, in itself, establish negligence as a matter of law, it is evident from a reading of the opinion in the cited case that it stands as authority for the reenunciation of certain well established principles of law. The opinion discussed the issue of diversion of attention in connection with the Louisiana rule of "momentary forgetfulness," and quoted the following recognized legal principles which we deem appropriate to the instant case, namely, that forgetfulness of or inattention to a known danger usually amounts to negligence; that forgetfulness, in itself, is not negligence unless it comprehends a failure *589 to exercise ordinary care for one's safety; that forgetfulness or inattention is excusable only under the existence of some fact, condition or circumstance which would divert the mind or attention of an ordinarily prudent person; that in the great majority of cases knowledge of danger must rest in the imputation arising from the fact that the peril was patent or obvious, or that the plaintiff was familiar with the offending place or appliance. Under the facts of the instant case established by the testimony of Mrs. Ensminger, she was intimately familiar with the entire area in and about which the accident occurred and had knowledge of the possible danger which might result from her lack of attention while walking through the narrow passageway.
Additionally, we are impressed with the fact that the danger to a pedestrian, represented by the leaning metal posts, was patent and obvious. This is true even if we construe the disputed facts in a manner most favorable to plaintiff. Conceding, arguendo, that the post was bent over the passageway at an angle of thirty degrees with the horizontal and that it was partially obscured by a parked automobile, it, nevertheless, constituted an apparent and readily observable obstruction to passage, particularly in view of the fact that Mrs. Ensminger had passed along exactly the same route a short time before.
In relating her story of the occurrence of the accident, the following testimony of Mrs. Ensminger on direct examination is pertinent:
"Q. Was there a car parked nearby?
"A. Yes, sir, and it was an old car, and you know, the bumpers stick out a little further than they do on these new cars and it was over it, it looked like, just a little bit." (Emphasis supplied)
Also material is the factual question as to the clear space left between the end of the bent post and the wall of the building. In connection with his brief, counsel for appellants attached a detailed diagram showing his calculations, which we have checked and found to be approximately correct. Assuming that a 15 inch vertical post had been bent over to an angle of 30 degrees with the horizontal, the end of the post would project 7½ inches above the surface of the ground. Further assuming the space between the wall of the building and the base of the post to have been 32 inches, the bending of the post would have reduced this clear space to approximately 19 inches. On this point, under cross examination, Mrs. Ensminger testified that the space was wide enough for two people to pass. We think this testimony is clearly in error, since it is obvious that a clear space of 19 inches is not sufficient to permit the free passage of two individuals.
There can be no question as to Mrs. Ensminger's knowledge of the existing condition, for she testified:
"I passed there and didn't fall over it when I went in and I walked by the building, so I don't think it went all the way across."
We regard the so-called diversion of attention and the explanation of the reason for Mrs. Ensminger's moving to her right as being strained and unreasonable. The approach of a person some 30 to 35 feet away did not require any immediate action of avoidance. Nor was the fleeting instant of such distraction sufficient in nature or degree to justify plaintiff's inattention and negligence in failing to look where she was going and to observe the obstruction which was obvious and should have been easily perceivable. The factual cause of the distraction or forgetfulness which was considered by our brethren of the First Circuit in the Crosby case, cited supra, was much more serious and, therefore, more calculated to constitute a sudden, adequate and emergently disturbing cause than the one which we have under consideration, despite which the opinion concluded that it was not sufficient to divert the mind or *590 attention of an ordinarily prudent person from the existing danger.
Counsel for appellants further argues that it is not negligent for a store customer whose glance is directed toward merchandise on display to fail to notice a defect in the aisle, citing Ransom v. Kreeger Store, Inc. (La.App. Orleans, 1935,), 158 So. 600; Lindsey v. Travelers Indemnity Co. (La.App. 2 Cir., 1959), 111 So.2d 153; Bowers v. Lumbermens Mutual Casualty Company (La.App. 2 Cir., 1961), 131 So.2d 70. Our examination of the cited cases fails to reveal that the question of distraction of attention or forgetfulness was considered in the opinion of the court in the Lindsey and Bowers cases. In the Ransom case the principal distinction is that the accident occurred inside the store when the plaintiff slipped on a wet spot in the aisle in which she was walking. The opinion quoted from Grigsby v. Morgan & Lindsey, et al., La.App., 148 So. 506, the well established principle that a store customer has the right to rely upon the assumption that the
"* * * entrance to the building and its floor, whereon he must stand or walk, as his needs may require, are safe for such uses on his part."
Even conceding that the responsibility of a store owner to his customers for conditions existing on his premises outside the store is commensurate with the responsibility for the condition of the aisles and floors of the store itself, we do not think such an obligation eliminates the duty of reasonable caution and prudence on the part of the customer. To hold otherwise would, in effect, constitute a store owner the insurer of his customers, which principle has been decried and denied in innumerable cases.
In Battles v. Wellan (La.App. 2 Cir., 1940, writs denied), 195 So. 663, the plaintiff slipped in a wet spot caused by rainwater on the tile flooring of an arcade immediately outside the entrance of defendant's store. The testimony of plaintiff was that she was not looking at the floor but had her attention focused on some dresses in the show window at the time of her fall. This court quoted with approval the opinion of the district judge which, with respect to the above facts, contained the following observation:
"This would indicate that she was giving no thought nor care as to the naturally, unusually smooth tile flooring over which she was walking at the time."
We think the facts which were under consideration in Gustine v. Big Chain Stores, Inc., et al., La.App. 2d Cir., 1938), 180 So. 852, are remarkably analogous to those in the instant matter. The following quotation from the opinion of the court is appropriate:
"Slightly before noon on April 4, 1936, plaintiff drove her Chevrolet coupe onto the lot in question and parked it to the right of and angling with the raised portion. The day was bright and clear. The left front wheel of her car rested almost against the western edge of the slab, while the left rear wheel was several feet away. She alighted by stepping from the left running board onto the elevated area, and then proceeded to and through the building's rear entrance which was to the left of her car. Her exit from the grocery place was made through the same doorway approximately five minutes later, at which time she carried her purse and a bundle containing two loaves of bread. Upon observing that she was separated from her automobile by another motor vehicle parked parallel with and to its left, she passed in front of the intervening machine, turned to her right, and proceeded between the two cars.
"The second car was located on the raised portion, its right front wheel being several feet east of the aforementioned western edge, while its right *591 rear wheel rested on or against such edge.
"When plaintiff reached for the handle of the left door of her coupe, and while standing between the two machines on the western edge of the elevated concrete, her left foot slipped, causing a turning of her ankle and the fall. She suffered injuries to that foot and to one of her knees.
"Plaintiff had traded with the store for many years, and it was customary for her to leave her car on the parking lot and enter the building through the rear entrance. In addition to being aware of the existence of the raised portion on the day of the accident when she alighted on it, she had seen it on her numerous previous visits there. Anyone looking could easily see it, according to her testimony."
The court's conclusion in the Gustine case was set forth as follows:
"In the case at bar, we think that plaintiff's inattention to or forgetfulness of the raised area and its attendant jagged edge was not consistent with the exercise of the ordinary care required of her. The record discloses no circumstances or conditions that arose at the time to momentarily distract or divert her attention from the alleged defect of which she was aware and which was plainly visible to her. She was contributorily negligent in that she failed to employ the care and caution that an ordinarily prudent person would have exercised under similar circumstances, and her negligence bars recovery herein.

"This court said in the case of Glatstein v. City of Shreveport [La.App.] 149 So. 158, 159, that: `The law requires that the pedestrian be observant of where and how he is going so that he may avoid dangers which ordinary care and prudence would disclose. While he is not bound to look for hidden dangers, he is required to walk with his eyes open, to observe his course, to see what is open and apparent, and to use that degree of care which the surrounding circumstances would dictate to a person of ordinary reasonable prudence.'" (Emphasis supplied)
We are convinced that Mrs. Ensminger was guilty of contributory negligence which effectively bars her recovery, and for this reason it is unnecessary to consider the other issues which are presented by this appeal.
For the reasons set forth the judgment appealed from is affirmed at appellants' cost.