136 So.2d 828 (1961)
Wallace BAKER
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY.
No. 5425.
Court of Appeal of Louisiana, First Circuit.
December 27, 1961.
Rehearing Denied February 6, 1962.
Certiorari Denied March 16, 1962.
Cobb & Brewer, by Roy Maughan, Baton-Rouge, for appellant.
Kantrow, Spaht & Kleinpeter, by Carlos G. Spaht and Jerry Millican, Baton Rouge, for appellee.
Before ELLIS and HERGET, JJ., and MILLER, J. pro tem.
HERGET, Judge.
Wallace Baker instituted this suit against Hartford Accident and Indemnity Company the liability insurer of Best Oil Company, Inc., owner and operator of Choctaw Shell Service Station, 3255 Choctaw Road in Baton Rouge, Louisiana, for damages allegedly sustained by him resulting when Plaintiff fell in the Choctaw Shell Service Station. From a judgment dismissing his suit, Plaintiff brings this appeal. As a basis for his cause of action, Plaintiff alleged:

"2.
"That on or about April 12, 1959, at approximately 8:00 p.m., petitioner was an invitee customer of the Choctaw Shell Service Station, 3255 Choctaw Road.

"3.
"That due to the negligence in construction and maintenance of a stepdown at the doorway of the servicestation building and due to the improper lighting and lack of sufficient lighting, petitioner fell as he attempted to go into said service station building, while his automobile was being serviced.

"4.
"That the Best Oil Company, Inc. is the owner and operator of said service station and had full knowledge of the dangerous condition of the said doorway and was negligent in not remedying it, and in failing to warn its invitees and business guests of the inherent, dangerous condition which existed and which in effect constituted a `trap'.

*829 "5.
"That at the time petitioner attempted to enter said service station building, the employees and/or agents of the Best Oil Company, Inc. were using some type of oil solvent and were hosing service station, all of which made the walk-way to the service station building extremely slippery."
Defendant, after making a general denial, in paragraph 9 of its answer entered a plea of contributory negligence, as follows:

"9.
"That if any accident occurred, as alleged by the plaintiff herein, which is denied by your respondent, then, and in that event, upon information and belief, your respondent alleges that said accident was caused solely and entirely through the gross and wanton negligence of the plaintiff herein, which said negligence consisted particularly, but not by way of limitation or exclusion, in failing to keep a proper lookout and in failing to take the necessary precautions for his own safety, and in failing to heed warnings which were made to him both orally, and which were completely and perfectly visible to him, when to heed such warnings would have prevented such an accident, if indeed such an accident did happen, which said acts of negligence, and others, constituted the sole and proximate cause of said accident and resulting damages, if any."
In his written reasons for judgment dismissing Plaintiff's suit, the Trial Court found:
"The only testimony relating to the happening of the accident was that given by plaintiff. His testimony is that he drove into the station to buy gasoline for his car; that one of the two attendants at the station, (which one was not stated), was then using a hose to put water on the concrete pavement around the gasoline pumps and the station office, and that all the concrete was wet; that the attendant put the hose down on the pavement and the white attendant came forward to put gasoline in the car; that plaintiff alighted from his car; that when the servicing of his car was completed he followed the white attendant toward the office for the purpose of paying his bill; that prior to reaching the office door, in attempting to step up on the concrete ledge running in front of the door, his feet flew out from under him and he fell to the concrete, landing on his right shoulder. The ledge in question is shown in the three photographs offered in evidence as P-1. As is shown in these photographs, the ledge does not form a vertical step up, but is joined to the lower level of the pavement by an incline or slope, the ledge being only a few inches higher than the lower level. The incline is painted white.
* * * *
"In my opinion the evidence here does not show that the operator of the station failed in his duty of exercising reasonable and ordinary care. The cleaning of the pavement with water and the yellow detergent did not create a condition that was unreasonably dangerous. I am satisfied from the evidence that plaintiff was fully aware of the condition of the pavement before he alighted from his car, and hence no warning was required. The white painted incline was in plain view, and plaintiff was undoubtedly aware of it since, according to his testimony, he had visited the station on several occasions prior to the date of the accident. Moreover, there is no evidence that the condition of the pavement or the presence of the incline had any connection with plaintiff's fall. In fact there is no evidence showing what caused him to fall. In my opinion plaintiff has not discharged the burden *830 of establishing by a preponderance of the evidence that negligence of defendant's insured was the proximate cause of the accident."
In Hays v. Maison Blanche Co. et al., La. App., 30 So.2d 225, at page 227, the Court observed:
"The law is well settled that the doctrine of res ipsa loquitur does not apply to a storekeeper, and his obligation to his customers and invitees is to use ordinary care to keep the aisles, passageways and floors of his premises in a reasonably safe condition. Powell v. [L.] Feibleman & Co., Inc., La. App. 187 So. 130; Bartell v. Serio, La. App., 180 So. 460; Battles v. Wellan, La.App., 195 So. 663; Greeves v. S. H. Kress & Co., La.App., 198 So. 171; Lawson v. D. H. Holmes Co., La.App., 200 So. 163; Joynes v. Valloft & Dreaux, Inc., La.App., 1 So.2d 108; Relf v. Aetna Casualty & Surety Co., La.App., 1 So.2d 345."
Plaintiff was the only witness who testified in reference to the happening of the accident. He failed to call under crossexamination any of the attendants at the service station though he had subpoenaed them and the Defendant did not place any witnesses on the stand as to the causation of the accident. From a review of Plaintiff's testimony it is questionable whether or not he had observed the presence of a "yellow compound" spread on the concrete prior to his fall, though it is his testimony that he made this observation after such fall. Nevertheless, granted such compound may have been used by the attendant in cleaning the concrete, there is nothing in the record which would have prevented Plaintiff's observation of this fact had he maintained a proper lookout as his own testimony is that such compound was readily visible to him upon his observation after his fall.
Regardless of whether or not Plaintiff was aware of the presence of this compound, admittedly he was fully aware of the fact and so testified that at the time the accident occurred the employee of the service station was engaged in "hosing" the station down, so that he was obviously aware of the fact the surface of the concrete in the station over which he voluntarily proceeded to walk was wet.
As observed by the Court in the case of Lawson et al. v. D. H. Holmes Co., Limited, La.App., 200 So. 163, at page 166:
"The accident, which occurred in broad daylight, is one which can and does frequently happen without the slightest fault on the part of anyone. The fact that it had been raining and that the vestibule was wet undoubtedly caused the passageway to be slippery but this, of itself, cannot be plausibly advanced by plaintiffs as an argument to hold the defendant liable for their mother's death. On the contrary, Mrs. Lawson knew that it was raining and she is to be charged with knowledge of the fact that one is apt to slip upon any wet surface. On this point, we find ourselves in absolute accord with the views expressed by the Supreme Court of Ohio in S. S. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N.E. 174, 175, 58 A.L.R. 132, where it said:
"`Owners or lessees of stores, office buildings, banks, hotels, theaters, or other buildings where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come. Everybody knows that the hallways between the outside doors of such buildings and the elevators or business counters inside the building during a continued rainstorm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be. The same thing is true in the hallways of all post offices. It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast *831 as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several very good reasons, all so obvious that it is wholly unnecessary to mention them here in detail.
"`It should be borne in mind that this accident did not happen in some dark walkway in the store where the shopper found it necessary to go. It occurred in broad daylight, and there is no pretense that there was anything to prevent any shopper from seeing and knowing precisely what the conditions were.
"`Not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from some one. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured. The character or extent of an injury has no bearing upon the question of the liability therefor; neither has the wealth nor the poverty of either party to such a litigation anything to do with the question of liability for the accident."` (Italics supplied.)
In the case of Ransom v. Kreeger Stores, Inc., et al., La.App., 158 So. 600, where a scrub woman employed by the defendant was negligent in permitting water to be left on the inside of the store on which plaintiff slipped, the Court concluded that there was no question as to the negligence of the storekeeper, and held that the plaintiff was not guilty of contributory negligence in failing to observe the wet condition of the floor for the reason her attention was attracted to the display of merchandise in the store and while she was walking in the store she had no reason to anticipate that the floor of the store was not dry. Obviously differentiated are the facts of this case where the Plaintiff, admittedly, knowingly attempted to traverse the wetted surface of the filling station. It is common knowledge that accumulations of dirt, dust, oil, grease and other foreign objects amass on a concrete surface in a filling station and whereas water by itself will cause concrete to become slippery, such condition is made more so when water is compounded with the accumulations described and is more apt to cause one to slip or/and fall. This condition was apparent to Plaintiff despite which he attempted to traverse the surface.
Assuming arguendo that Defendant was negligent in washing down the concrete during business hours and in not specifically warning invitees of the slippery condition of the surface of the concrete, the Plaintiff with full knowledge of the wetted surface attempting to walk thereon is guilty of contributory negligence barring his right to recover for injuries sustained resulting from his slipping.
For these reasons the judgment is affirmed.
Affirmed.